[Cite as *State v. Cowan*, 2024-Ohio-2028.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

DAVID A. COWAN, III,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-20

O P I N I O N


**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2022 0101**

**Judgment Affirmed**

**Date of Decision:  May 28, 2024**


**APPEARANCES:**

    *F. Stephen Chamberlain* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**GWIN, J.,**

{¶1}   Defendant-appellant David A. Cowan, III ["Cowan"] appeals his conviction and sentence after a jury trial in the Allen County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   On April 14, 2022, the Grand Jury issued an indictment against Cowan charging him with Rape, Attempted Rape and two counts of Sexual Imposition. On August 11, 2022, a Superseding Indictment was filed with the following charges:

Count One: Rape, from on or about Sept. 1, 2021 through December 11, 2021, by force or threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / 2907.02(B);

Count Two: Unlawful Sexual Conduct with a Minor, from on or about Sept. 1, 2021 through December 11, 2021, minor thirteen but less than sixteen years old and defendant ten or more years older, a felony of the third degree in violation of R.C. 2907.04(A) / 2907.04(B)(3);

Count Three: Attempted Rape, from on or about Sept. 1, 2021 through December 11, 2021, by force or threat of force, a felony of the second degree in violation of R.C. 2923.02 / 2907.02(A)(2) / 2907.02(B);

Count Four: Rape, from on or about December 12, 2012, by force or threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2)/ 2907.02(B);

Count Five: Rape, from on or about December 12, 2012, substantially impaired victim, a felony of the first degree in violation of R.C. 2907.02(A)(1)(c) / 2907.02(B);

Count Six: Unlawful Sexual Conduct with a Minor, from on or about December 12, 2012, minor thirteen but less than sixteen years old and defendant ten or more years older, a felony of the third degree in violation of R.C. 2907.04(A) / 2907.04(B)(3);

Count Seven: Gross Sexual Imposition, from on or about December 12, 2012, substantially impaired victim, a felony of the fourth degree in violation of R.C. 2907.05(A)(5) / 2907.05(C)(1);

Count Eight: Sexual Imposition, from on or about December 12, 2012, defendant eighteen or older and more than four years older than victim and victim thirteen but less than sixteen years old.

{¶3} Trial before a jury was held on March 7, 2023 through March 9, 2023. Count 8 was dismissed by the state prior to the commencement of the trial. 1T. at 1-2.[1]

---

[1] For clarity, the transcript of Cowan's jury trial will be referred to as "__T.__" signifying the volume and page number.

*C.K., the minor N.W.'s guardian*

**{¶4}** C.K.[2] was called as a witness by the court. 2T. at 203-204. C.K. who is not related, has been the guardian of N.W. (b. Aug. 22, 2007)[3] since the child was two years old. 2T. at 205; 243. C.K. and Cowan began a relationship in 2020. Id. at 206. By late summer of 2021, C.K., N.W. and C.K.'s four children moved in with Cowan. Id. In the fall of 2021, C.K. and Cowan gave birth to a son. C.K. testified that Cowan is a smoker. Id. at 210.

**September 1, 2021 through December 11, 2021**

*N.W.'s testimony*

**{¶5}** N.W. testified that there were several times at night when she would wake up and Cowan would be standing in her bedroom in the dark. 2T. at 256. Neither N.W. or Cowan spoke during these occurrences. Id. at 257. N.W. would pretend to be asleep and Cowan would leave after five to ten minutes. Id.

**{¶6}** However, in October 2021, N.W. testified that she woke up to find Cowan on top of her in her bed. 2T. at 261. N.W. heard the jingle of his belt buckle as Cowan removed his pants. Id. at 262. N.W. froze as she felt Cowan's hands near her shoulder and his legs by hers. N.W. began to feel a poking below her belly button that hurt. Id. at 263.

---

[2] *See*, Sup.R 45(E)(3) which provides that "[w]hen restricting public access to a case document or information in a case document pursuant to this division, the court shall use the least restrictive means available, including * * * (e) [u]sing initials or other identifier for the parties' proper names."

[3] Recognizing the heightened privacy interests of minors, we identify N.W. only by her initials in accord with Sup.R. 1(A), 44(C), 44(H) and 45(D).

N.W. described the pain as a ten on a scale of one to ten. N.W. described the pain as located in her vagina. Id. at 264. N.W. described feeling Cowan's penis in her vagina. Id. at 264-265. She testified that it hurt. She said Cowan remained on top of her for what seemed like thirty minutes. N.W. testified that her pajama bottoms and her underwear were pulled down around her ankles. Id. at 266. N.W. did not tell anyone what had occurred because she was scared. Id. at 267.

{¶7} In October 2021, Cowan again entered N.W.'s bedroom during the nighttime. 2T. at 268. Cowan stood near the head of her bed as she pretended to sleep. N.W. heard Cowan's belt unbuckle and felt her head being pulled toward him. Id. at 269. Cowan was moving her head with his hands. N.W. turned her head away; however, Cowan attempted several more times to pull her head toward him. 2T. at 271. After hearing a noise coming from outside the room, Cowan hurriedly left her bedroom. Id. at 272-273. N.W. told no one about this incident claiming she was scared to tell anyone. Id. at 273. N.W. testified that she does not smoke. Id. at 282.

## December 12, 2021

{¶8} In the early morning hours of December 12, 2021, C.K. woke up and noticed that Cowan was not in their bed. 2T. at 211. C.K. got out of bed and began to look for Cowan. Id. at 211-213. Upon opening N.W.'s bedroom door, C.K. saw Cowan inside the room facing the closet while fixing his pants. Id. at 214-215. C.K. flipped on the lights and saw that N.W.'s pajama pants and underwear were pulled down and she

was exposed. Id. at 215-216, 276. C.K. also found Cowan's belt on the bed. Id. at 216. C.K. called 9-1-1 and told the operator that she had caught Cowan in her fourteen-year-old daughter's room. Id. at 219; State's Exhibit 1.

{¶9}  N.W. testified that around 3:00 a.m. she heard the closet door in her bedroom open. She woke up to the light on and C.K. screaming at Cowan. 2T. at 275. N.W. testified that her pajama bottoms and her underwear were pulled down to below her knees. Id. at 276. She saw Cowan pulling up his pants. Id. at 277. She heard Cowan tell C.K. that he was in N.W.'s bedroom checking the heating vents. Id at 278.

{¶10} After the police arrived C.K. and others accompanied N.W. to the hospital for a sexual assault examination. 2T. at 280-281, 344. At the hospital, N.W. told the Pediatric Sexual Assault Nurse Examiner ["PSANE"] that she felt pain in her vagina and that it hurt to urinate. 2T. at 280-281.

{¶11} The samples taken during the examination by the PSANE were positive for acid phosphatase, an enzyme found in semen, vaginal secretions and saliva. 2T. at 383; 3T. at 412. There was no indication of any sperm cells present in the samples. Id. at 413. The swabs showed that Cowan's STR DNA (him individually) was found on the skin swab taken from N.W.'s face and Cowan's Y-STR DNA (Cowan's paternal male lineage) was found in the vaginal samples, anal samples, and facial skin swabs taken from N.W. 3T. at 402-412; State's Exhibit 24.

{¶12} A cigarette was recovered by N.W.'s pillow that was the same kind that Cowan smoked. 2T. at 216, 332; 3T. at 436, 461-462; State's Exhibits 17,18,19.

**Cowan testifies at trial**

{¶13} Cowan testified that his son was born on November 22, 2021. 3T. at 449. It was undisputed that the only other male line relative in the home would have been the infant son of Cowan and C.K. Cowan further testified that he smokes Marlboro menthol cigarettes, the same brand found in N.W.'s bed on December 12, 2012. Id. at 456; 462.

{¶14} Cowan denied the incidents prior to December 12, 2021. Id. at 453. Cowan testified that on December 12, 2021 he and C.K. had argued about his box of trinkets from other relationships. 3T. at 454. He and a friend stayed up drinking and playing video games and cards after the others had gone to bed. At some point, Cowan went to the garage to smoke a cigarette. Id. at 456.

{¶15} Cowan explained that on that night, he went around the home making sure the doors and windows were locked. Id. at 457. He testified he was in N.W.'s bedroom making sure the furnace was blowing out heat to that part of the house. Id. Cowan further testified that he was fussing with his pants when C.K. came into the bedroom because he fluctuates in weight and his pants were too big. Id. at 458.

Case No. 1-23-20

## The jury's verdicts

{¶16} The jury found Cowan "Not Guilty" with respect to the events alleged to have occurred September 1, 2021 through December 11, 2021, Counts One, Two and Three.

{¶17} The jury found Cowan "Guilty" with respect to the events occurring on December 12, 2021, Count 4, Rape, a felony of the 1st degree; Count 5, Rape, a felony of the 1st degree; Count 6, Unlawful Sexual Conduct with a Minor, a felony of the 3rd degree; and Count 7, Gross Sexual Imposition, a felony of the 4th degree.

## The sentence

{¶18} A sentencing hearing was held on April 13, 2023. The parties agreed that Counts 4, 5, 6, and 7 merged pursuant to R.C. 2941.25 and the state elected to proceed on Count 4, Rape. Sent. T., Apr 13, 2023 at 10-15. The trial judge sentenced Cowan to 10 to 15 years in prison with the Ohio Department of Rehabilitation and Correction.

*Assignments of Error*

{¶19} Cowan raises three Assignments of Error,

**"I. THE TRIAL COURT ERRORED [sic.] IN CONVICTIONS BECAUSE THE STATE'S CASE FAILED TO MEET THE SUFFICIENCY OF THE EVIDENCE TEST. FURTHERMORE, THE STATE'S CASE FAILED TO MEET THE MANIFEST WEIGHT OF THE EVIDENCE TEST.**

**"II. COWAN WAS DEPRIVED OF A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT.**

**"III. JUROR MISCONDUCT DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY A NEUTRAL TRIER OF FACT."**

{¶20} In his First Assignment of Error, Cowan maintains that his convictions are against the manifest weight of the evidence. Cowan further argues that there is insufficient evidence to support his convictions.

**Standard of Appellate Review – Sufficiency of the Evidence**

{¶21} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30; *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶22} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment*

*on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker,* 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Cowan was guilty beyond a reasonable doubt of Rape*

{¶23} Cowan was convicted of force / threat of force rape in violation of R.C. 2907.02(A)(2). R.C. 2097.02 provides,

(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶24}** "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse. R.C. 2907.01(A).

**{¶25}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶26}** We need not address the sufficiency and the weight of the evidence supporting the jury's findings of guilt as to Rape, substantially impaired victim [Count 5], Unlawful Sexual Conduct with a Minor [Count 6] and Gross Sexual Imposition [Count 7] because those offenses were allied offenses and were merged into Count 4. *State v. Sheldon,* 3rd Dist. Hardin No. 6-18-07, 2019-Ohio-4123, ¶11; *State v. Crawford,* 3rd Dist. Crawford No. 3-18-16, 2019-Ohio-2959, ¶38. *Accord, State v. Henderson,* 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶9; *State v. Ramos,* 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14; *State v. Smith*, 10th Dist. No. 08AP–736, 2009–Ohio–2166, ¶ 27; *State v. Mugrage,* 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶133. *See also, State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) (since the trial

court merged convictions with one another, the appellant received only one sentence, and an erroneous verdict on the merged count would be harmless beyond a reasonable doubt).

{¶27} The evidence presented during Cowan's jury trial established that N.W. is not and never was Cowan's spouse. Cowan dated N.W.'s guardian and N.W.'s family moved into Cowan's home. Cowan and N.W.'s guardian C.K. had a child born November 22, 2021. N.W. was fourteen years old when the events forming the charges in Count Four of the Indictment occurred.

{¶28} C.K. testified that she found Cowan in N.W.'s bedroom in the middle of the night, and when C.K. surprised him by turning on the bedroom light Cowan was facing the closet while fixing his pants. 2T. at 214-215. C.K. observed that N.W.'s pajama pants and her underwear were pulled down around her knees. Evidence was presented that N.W. awoke to find her pajama bottoms and her underwear had been pulled down below her knees, leaving her exposed. Both N.W. and C.K. observed Cowan in the bedroom pulling his pants up. Cowan admitted he was in N.W.'s bedroom and that he was fussing with his pants. N.W. complained of pain in her vagina and was taken to the hospital. The swabs showed that Cowan's STR DNA (him individually) was found on the skin swab taken from N.W.'s face and Cowan's Y-STR DNA (Cowan's paternal male lineage) was found in the vaginal samples, anal samples, and facial skin swabs. 3T. at 402-412; State's Exhibit 24. A cigarette was recovered by N.W.'s pillow that was the

same kind that Cowan smoked. 2T. at 216, 332; 3T. at 436, 461-462 State's Exhibits 17 18, and19. Cowan's belt was recovered from N.W.'s bed. Id. at 216.

{¶29} R.C. 2907.05(A)(1) requires the victim's submission to sexual contact to be obtained by force or threat of force. *State v. Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306 (5th Dist.), ¶16. In *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), the Supreme Court of Ohio found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. Id. at ¶ 58. However, some amount of force must be proven beyond the force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763, 766 (1998).

{¶30} Here, the victim was not an adult when she was sexually assaulted. She was a minor and still considered a child. The Ohio Supreme Court has stated that "it is nearly impossible to imagine the rape of a child without force involved," *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998), and the Court has noted "the coercion inherent in parental authority when a father sexually abuses his child*," State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). "'The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.'" Id. at 59, 526 N.E.2d 304, *quoting State v. Etheridge*, 319

N.C. 34, 47, 352 S.E.2d 673 (1987); *Disciplinary Counsel v. Goodman*, Slip Op. 2024-Ohio-952, 2024 WL 1055288 (Mar. 12, 2024), ¶24.

**{¶31}** At trial, N.W. testified the assault took place without her consent while she slept. In order to accomplish this, Cowan had to pull down N.W.'s pajama bottoms and underwear and manipulate her body and her legs. We find these facts sufficient to demonstrate Cowan used force against his minor sleeping victim in order to compel her submission. *State v. Lauderdale,* 2nd Dist. Montgomery No. 29753, 2024-Ohio-481, ¶35; *State v. Stevens,* 3rd Dist. Allen No. 1-14-58, 2016-Ohio-446, 58 N.E.3d 584, ¶27-28; *State v. Burton,* 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, ¶42; *State v. Green,* 5th Dist. Delaware No. 01CA-A-12-067, 2002-Ohio-3949, ¶61; *State v. Artis,* 6th Dist. Lucas No. L-19-1267, 2021-Ohio-2965, ¶95; *State v. Walker*, 8th Dist. Cuyahoga No. 96662, 2011-Ohio-6645, ¶20; *State v. H.H.,* 10th Dist. Franklin No. 10AP-1126, 2011-Ohio-6660, ¶12.

**{¶32}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Cowan did commit the crime of rape by force or threat of force. We find, therefore, that the state met its burden of production regarding each element of the crime of Rape for which Cowan was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Cowan's conviction.

**Standard of Appellate Review – Manifest Weight**

**{¶33}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶34}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, Slip Op. No. 2023-Ohio-3800; *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶35}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State*

*v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). As one Court has explained,

When faced with a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the burden of production, which concerns a party's duty to introduce enough evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 17. Therefore, in order for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence— which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387-388,

678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. Id.

*State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 8.

**{¶36}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered*

**{¶37}** When there is conflicting testimony presented at trial, a defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. *See also State v. J.E.C.*, 10th Dist. No. 12AP-584, 2013-Ohio-1909, ¶ 42. The jury may consider conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or otherwise resolving the discrepancies. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, *citing Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, ¶ 28 (10th Dist.). "'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert

opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.'" *State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 63, *quoting State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 39.

{¶38} A reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶39} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. To the

contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Cowan's guilt.

{¶40} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. While Cowan is certainly free to argue that the witnesses were either mistaken or lying, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of the state's witnesses. The jury was able to observe the witnesses, including N.W., C.K. and Cowan, subject to cross-examination. The jury found Cowan "Not Guilty" of Counts One through Three of the Indictment. Thus, a rational basis exists in the record for the jury's decision.

{¶41} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Cowan was convicted. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction on the charge.

{¶42} Cowan's First Assignment of Error is overruled.

II.

{¶43} In his Second Assignment of Error, Cowan contends the prosecutor committed plain error during closing argument by improperly bolstering a state's witness and asking the jury to draw improper inferences regarding the investigation procedures.

**{¶44}** Cowan did not object to the comments he now assigns as error. Therefore, he concedes that he has forfeited all but plain error.

**Standard of Appellate Review – Plain Error**

**{¶45}** Recently, the Ohio Supreme Court reviewed claims of plain error and stated,

> To prevail under the plain-error standard, the defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights. Crim.R. 52(B); State *v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) (an error affects substantial rights only when it affects the outcome of the trial). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Nicholson,* Slip Op. No. 2024-Ohio-604, 2024 WL 716018 (Feb. 22, 2024), ¶114. *See also, State v. Knuff,* Slip Op. No. 2024-Ohio-902, 2024 WL 1097397 (Mar. 14, 2024), ¶117.

**{¶46}** In *Knuff*, the Supreme Court addressed the appropriate standard of review for addressing claims of prosecutorial misconduct during closing argument,

> We assess prosecutorial misconduct in closing arguments by asking "'whether the remarks were improper and, if so, whether they prejudicially affected [the] substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio

St.3d 108, 125, 734 N.E.2d 1237 (2000), *quoting State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). A conviction may be upheld in the face of a prosecutor's improper remarks when it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" regardless of the comments. *United States v. Hasting*, 461 U.S. 499, 511-512, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (new trial unwarranted despite prosecutor's improper argument because of "overwhelming evidence of guilt and the inconsistency of the scanty evidence tendered by the defendants").

*State v. Knuff,* Slip Op. No. 2024-Ohio-902, 2024 WL 1097397 (Mar. 14, 2024), ¶238.

**Issue for Appellate Review:** *Whether but for the prosecutor's remarks during closing arguments the jury would have acquitted Cowan.*

**{¶47}** Cowan cites the following remarks made by the prosecutor during closing argument,

Think about why [N.W.], why would [N.W.] do all of this, right? We talked about, again, putting reason to action, right? Or motive to lie. Why would [N.W.] - ·why would [N.W.] go through all this? What does [N.W.] benefit? What - - what's the game? Going back to the twelfth, right? Having her mom come into her room, scream, right? Which again that's [C.K.'s], that's [C.K.] doing all those things, right? But then in that moment, if this was some plan to get David Cowan, well [C.K.] woulda had to come up with

it and [N.W.] would have to join in all of a sudden randomly, right? And they have this perfect plan to get David Cowan. Alright, but why would [N.W.] do this?

Endure this or - - ordeal, right? Watch what's going on in her room, then go to the hospital, submit to a sexual assault examination, right, lay on a table, have a stranger take a swab, run it through her vagina and around her anus and put it in an envelope to be tested? Take her clothes, take her underwear, have the nurse take a comb just like this, this is out of the sample kit. Take a comb just like this and comb her pubic hair. That doesn't sound like fun. This doesn't sound like something somebody wants to go through just to come up with some story. This is real life folks. Fourteen-year olds don't want to do this. They don't want to sit in a doctor's office to endure all that, to make up some story because they're not happy or (inaudible).

3T. at 487-488. [Appellant's brief at 16-17].

**{¶48}** Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing arguments. *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, 2013 WL 6406316, ¶ 18. As a general rule "[i]t is improper for an attorney to express his or her own personal belief or opinion as to the credibility of a witness." *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). A prosecutor improperly vouches

for the credibility of a witness "'when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 200, *quoting State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 232.

{¶49} We find the prosecutor's statements to be based upon the evidence presented during the trial and do not find the prosecutor improperly expressed a personal opinion on the truthfulness of the witnesses. In the case at bar, credibility of Cowan and N.W. was the main argument advanced by Cowan at trial. The prosecutor did no more than invite the jury to consider the plausibility of the defense theory that N.W. and C.K. conspired to frame Cowan.

{¶50} Even if we were to assume arguendo that the prosecutor's statements were improper, Cowan is unable to demonstrate the type of prejudice necessary to require reversal based on plain error from prosecutorial misconduct. *See State v. Guade*, 10th Dist. No. 11AP-718, 2012-Ohio-1423, ¶ 20. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶168, citing *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001).

{¶51} Cowan was not deprived of a fair trial due to prosecutorial misconduct. The evidence against Cowan was overwhelming, and there is little chance that absent the

-23-

improper comments, the result of his trial would have been different. Any potential prejudice was mitigated by the trial court's instruction to the jury that closing arguments are not evidence. *McAlpin*, 169 Ohio St.3d 279, ¶ 188, *citing State v. Jones*, 91 Ohio St.3d at 353, 744 N.E.2d 1163 (2001).

**{¶52}** Cowan has not demonstrated that the jury abandoned their oaths, their integrity or the trial court's instructions and found him guilty based upon the prosecutor's statements. It is clear beyond a reasonable doubt that the jury would have returned a verdict of "guilty" regardless of the comments.

**{¶53}** Cowan's Second Assignment of Error is overruled.

### III.

**{¶54}** In his Third Assignment of Error, Cowan argues the trial judge erred by not sua sponte declaring a mistrial because of juror misconduct. Specifically, the trial judge was made aware by the foreperson that the foreperson and other members of the jury were concerned about the objectivity of one juror following her disclosure while deliberating that she was molested as a child. 3T. at 531. The trial judge inquired of the juror and the juror was replaced. Thus, the court ordered for deliberations to begin anew. Id. at 536-539.

**{¶55}** Because Cowan did not move for a mistrial, he has forfeited all but plain error.

**Standard of Appellate Review**

**{¶56}** The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover,* 35 Ohio St.3d 18, 517 N.E.2d 900(1988); *State v. Hessler*, 90 Ohio St.3d 108, 115–116, 734 N.E.2d 1237 (2000).

**{¶57}** An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for appellate review:** *Whether the trial judge's failure to sua sponte declare a mistrial is clearly untenable, legally incorrect, or amounts to a denial of justice, or reaches an end or purpose not justified by reason and the evidence.*

**{¶58}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a defendant accused of a state criminal violation shall be tried before a panel of fair and impartial jurors. *See Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491(1968), and *State v. King*, 10 Ohio App.3d 161, 460 N.E.2d 1383(1st Dist. 1983). *See, also*, Ohio Constitution, Article I, Section 10.

{¶59} The conclusions reached in a case should be generated only by evidence and argument in open court, and not by any outside influence. *Patterson v. Colorado*, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879(1907). Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct. *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818(4th Dist. 1991). *See also, Carr v. State,* 22 Ohio App. 78, 153 N.E. 233(1st Dist. 1926); *Busick v. State*, 19 Ohio 198, 1850 WL 78(1850); and *State v. Carter*, 11 Ohio Dec. Rep. 123, 1890 WL 419(C.P.1890); *State v. McMillen*, 5th Dist. Stark No. 2008–CA–0122, 2009–Ohio–210, ¶ 122. However, the United States Supreme Court has recognized:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable.... [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 102 S.Ct. 940, 946 (1982); United *States v. Olano,* 507 U.S. 725, 738, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993).

{¶60} In the case at bar, the trial judge questioned the juror on the record in the presence of Cowan, his attorney and the prosecutor. 3T. at 531-533. The prosecutor objected to removing the juror claiming there are no "do overs in jury selection" and since the potential bias of the juror was not uncovered by defense counsel during voir dire the juror should not be removed. Id. at 533-534. The trial judge was not persuaded. Id. at 536-537. The trial judge stated,

> The Court, the Court has made its decision, I made the decision I'm in - - I'm in my effort is to pro -- to avoid even an appearance of unfairness. And again, I think the way the note was phrased to the Court, the juror, the foreperson speaking, in terms of "we" the fact that "we are concerned as to her objectivity" that's really more so than [the juror] said. I take [the juror] at her word if she said she couldn't let it - - it wouldn't affect her ability to be fair and impartial but the other jurors were concerned so the Court, in the abundance of caution, to make sure that its completely fair. Had that been revealed, obviously the defense would have a - - had an opportunity for a preemptory, they didn't use all their peremptories so. All of that's the reason I did that, so. It is what it is.

3T. at 536-537. The trial judge then instructed the jury as follows,

> Alright, we got eleven of the original jurors and the first alternate are in the courtroom now and the record reflects that the court has excused one

of the original jurors based upon a note that was given to the Court. And uh, as the rules states ladies and gentlemen of the jury, that if an alternate replaces a juror during deliberations, I must instruct you to start your deliberations anew. So I have a couple questions for the eleven folks that were a part of the original jury and um, obviously there had to been some revelation from the juror that I excused and prompted the note, is there any juror from the original eleven that was privy to - - to that discussion that prompted the note, that feels like that discussion with the juror that's been excused or anything about that is going to prevent you from being fair and impartial? Is there any juror in that situation?

Is there any juror from the original eleven who doesn't feel like, now im [sic.] going to ask you to start from the beginning because now you'll have an alternate juror, a new juror, and so you gotta kinda start - - forget what you guys talked about already and kind of start from the beginning, is there any juror that can't do that?

Alright, and then [alternate juror] then you'll be an alternate so we're going to start from the beginning just like you were there from the beginning, okay? And has anything now, you uh left after the jurors went to deliberate, does anything happen that would prevent you from being fair and impartial?

JUROR: No.

3T. at 537-538.

**{¶61}** Under the circumstances, we must defer to the trial judge who had the opportunity to hear the potential jurors and observe their demeanor. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304(1988); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523(1988); *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356(1982). We are not inclined to substitute our judgment for the trial judge's judgment concerning the credibility of the jurors. *State v. Taylor,* 73 Ohio App.3d 827, 833, 598 N.E.2d 818 (4th Dist. 1991).

**{¶62}** Looking at the above incident, we cannot find the trial judge abused his discretion. As required, the court conducted a hearing to inquire into whether there had been any effect upon the remaining potential jurors because of the potential misconduct on the part of the juror excused. The court determined that the incident had no effect upon the remaining potential jurors. The trial judge also instructed the jurors to begin their deliberations anew. Upon review, the judge's actions clearly satisfied his duty to inquire and his decision was not clearly untenable, legally incorrect, a denial of justice, nor did it reach an end or purpose not justified by reason and the evidence.

**{¶63}** Accordingly, we find no plain error affecting Johnson's substantial rights.

**{¶64}** Cowan's Third Assignment of Error is overruled.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J, concur.**

**\*\*Judge W. Scott Gwin of the Fifth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**