[Cite as *State v. Ridenbaugh*, 2024-Ohio-3072.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023 CA 00087 |
| TEDDY E. RIDENBAUGH, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:　　　Appeal from the Licking County Court of
　　　　　　　　　　　　　　　　　　　　　　Common Pleas, Case No. 23-CR-87


JUDGMENT:　　　　　　　　　　　　　Affirmed


DATE OF JUDGMENT ENTRY:　　　August 12, 2024


APPEARANCES:

For Plaintiff-Appellee　　　　　　　　　For Defendant-Appellant

JENNY WELLS　　　　　　　　　　　　KATHERINE ROSS-KINZIE
Licking County Prosecutor　　　　　　　Assistant Public Defender
BY: KENNETH W. OSWALT　　　　　　250 East Broad St., Ste. 1400
Assistant Prosecutor　　　　　　　　　Columbus, OH 43215
20 S. Second Street, 4th Floor
Newark, OH 43055

*Gwin, P.J.*

{¶1} Defendant-appellant Teddy E. Ridenbaugh, Jr. ["Ridenbaugh"] was convicted after a jury trial of aggravated possession of methamphetamine and possession of a fentanyl-related compound. On appeal Ridenbaugh contends that his convictions must be reversed for plain error and ineffective assistance of counsel because a potential juror twice mentioned that he knew of Ridenbaugh from his work at the jail, and the prosecutor committed misconduct by telling the jury during closing argument that Ridenbaugh was found on a bed in the room were the drugs where found. Ridenbaugh further contends that his convictions are against the manifest weight of the evidence.

{¶2} Because we do not find a reasonable probability that the errors resulted in prejudice, meaning that the error affected the outcome of the trial, and because we find the jury did not lose its way finding Ridenbaugh guilty, we affirm the judgment of the Licking County Court of Common Pleas.

*Facts and Procedural History*

{¶3} Daniel Quick was living in his mother's house at 555 Seroco Avenue. T. 171; 184.[1] Officers with the Central Ohio Drug Enforcement ("CODE") task force began watching this house for possible drug activity beginning in December, 2022. Id. at 156. On February 16, 2023, officers obtained a search warrant for the property, which they executed via a "breach and hold" on the morning of February 17, 2023. Id. at 157. When they executed the warrant, seven people were in the home, including Ridenbaugh. Police observed, "two people tried to run out the back, one was laying on the floor, two people

---

[1] For clarity, the transcript of Ridenbaugh's jury trial will be referred to as "T.__" signifying the page number.

were found hiding inside the residence." Id. Quick and Ridenbaugh came outside when police ordered them out. T. at 158. Police detained four of the seven occupants while they searched the house. Id. at 133; 158.

{¶4} Quick's mother owned the house. T. at 171. There were only two bedrooms in the residence. T. at 161. The police searched Quick's bedroom, which included a security monitoring system, that Detective Jarrod Conley of CODE, testified is common for drug traffickers. T. at 159-160. The room was identified as Quick's because he was found asleep in the bed in that room, and because it contained his personal possessions. Id. Mail with Quick's name and address was found inside the residence. T. at 173.

{¶5} The second bedroom was identified as Ridenbaugh's. T. at 161; 170. Among the clutter of trash and personal items, the second bedroom contained drug paraphernalia in plain sight. T. at 110; 170. State's Exhibits 3-E; 3-P; 3-R. The room also contained drugs, in various locations, including inside a closed wooden box on a table, with a syringe laying nearby. T. at 110-117. Drugs were also found inside a plastic container that looked like a flashlight hanging on the wall. T. at 110-117; State's Exhibits 3-D; 3-J; 3-P; and 3-V.

{¶6} Items removed from the room associated with Ridenbaugh include a syringe, smoking bong and snorting straw. T. at 115-116; State's Exhibits 3-E; 3-P; and 3-R. A BB gun was also found on the bed. T. at 112; State's Exhibit 3-F. A wooden box containing bags of suspected methamphetamine and marihuana was located on a table in the room. T. at 113-114; 122; State's Exhibits 3-J; 3-M; 3-N; State's Exhibit 4. Scales were also recovered from the room. T. at 116; State's Exhibit 3-T. A flashlight containing baggies of suspected methamphetamine and fentanyl stuffed inside was found. T. at 116-

117; 122; State's Exhibits 3-V; 3-X; 5; 6. A pizza box with Ridenbaugh's name was located inside the room. T. at 118; State's Exhibit 3-Y. A very small amount of additional methamphetamine, (.22 grams) which the police suspected was fentanyl, was also found on the bedside table T. at 123; 142; 148; State's Exhibits 9; 10; and 12. No items of mail addressed to Ridenbaugh were found during the search. T. at 173.

{¶7} The items were analyzed and weighed at the Central Ohio Regional Crime Lab. T. at 134. The two baggies recovered from inside the plastic container found in the bedroom, contained 17.7498 and 0.2589 grams of methamphetamine. T. at 122-123; 148; State's Exhibit 11. State's Exhibit 4, recovered from the wooden box contained 9.6912 grams of methamphetamine. T. at 122; 148. State's Exhibit 5 also recovered from the plastic container contained 1.4003 grams of fentanyl-related compounds. T. at 122; 148.

{¶8} While he was detained, and after being read his *Miranda* rights, Ridenbaugh spoke very briefly with Detective Conley. T. at 161; State's Exhibit 7. Ridenbaugh told the officer that the gun found on the bed in the room was a BB gun. T. at 161. When asked about the drugs in the room, Ridenbaugh told the detective, "they'd been there." Id. at 171. He then says, "I don't know, I don't know." Id. Ridenbaugh admits to the police he periodically uses both methamphetamine and fentanyl throughout the day. Id. at 161-162. Because he was worried about the few personal belongings he had in the room getting stolen, Ridenbaugh asked Detective Conley if he could get him his shoes, watch, and backpack, none of which contained any contraband, from the room. Id. at 162- 163; 171; State's Exhibit's 3-E; 3-K; 3-C.

{¶9} Ultimately, Ridenbaugh was indicted on a multi-count indictment stemming in part from the search warrant and in part from a prior traffic stop on December 28, 2022.

He was charged with: Count One, aggravated possession of drugs, methamphetamine, less than bulk amount, a fifth-degree felony in violation of R.C. 2925.11(A) / (C)(1)(a) [relating to the traffic stop]; Count Two, possession of fentanyl related compound, less than 10 unit doses or 1 gram, a fifth-degree felony in violation of R.C. 2925.11(A) / (C)(11)(a) [relating to the traffic stop]; Count Three, aggravated possession of methamphetamine, at least 5 times bulk amount but less than 50 times bulk amount, a second-degree felony in violation of R.C. 2925.11(A) / (C)(1)(c) [relating to the search warrant]; Count Four, possession of fentanyl related compound, at least 10-unit doses or 1 gram but less than 50-unit doses or 5 grams, a fourth-degree felony in violation of R.C. 2925.11(A) / (C)(11)(b) [relating to the search warrant]; and Count Five, aggravated possession of drugs, morphine, less than bulk amount, a fifth-degree felony in violation of R.C. 2925.11(A) / (C)(1)(a) [relating to the search warrant].

{¶10} Prior to the start of the jury trial, Ridenbaugh entered, and the judge accepted, guilty pleas to the first two counts of the Indictment, which were related to the traffic stop. T. at 9-17. Prior to deliberations, Count Five of the Indictment concerning morphine was dismissed on motion of the state. Id. at 191-192. The two remaining counts in the indictment were submitted to the jury, and they found Ridenbaugh guilty of both counts, additionally finding the specific amount of each drug needed for the degree charged. The court sentenced Ridenbaugh to 12 months on each of the fourth and fifth-degree felonies (Count One, Count Two, and Count Four) and a minimum term of four years, with a maximum of six years of mandatory prison time on the second-degree felony, Count Three. The trial judge ordered all counts to run concurrently.

*Assignments of Error*

{¶11} Ridenbaugh raises four Assignments of Error,

{¶12} "I. MR. RIDENBAUGH'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WAS VIOLATED WHEN HIS RIGHT TO THE PRESUMPTION OF INNOCENCE WAS VIOLATED. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION; R.C. 2901.05(A).

{¶13} "II. PROSECUTORIAL MISCONDUCT DENIED MR. RIDENBAUGH A FAIR TRIAL AND DUE PROCESS OF LAW. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION.

{¶14} "III. MR. RIDENBAUGH WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO REQUEST A NEW JURY PANEL AFTER THE ENTIRE VENIRE WAS EXPOSED TO INFORMATION ABOUT MR. RIDENBAUGH'S INCARCERATION BEFORE TRIAL STARTED; FAILED TO OBJECT TO THE STATE'S MISSTATEMENTS OF FACT IN ITS CLOSING ARGUMENT, AND FAILED TO REQUEST CURATIVE INSTRUCTIONS OR A MISTRIAL REGARDING EITHER ERROR. SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION.

{¶15} "IV. MR. RIDENBAUGH'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION."

I.

{¶16} In his First Assignment of Error, Ridenbaugh claims that a reference by a prospective juror that the juror knew of him from having worked at "the jail" compromised his presumption of innocence so much so that it constituted plain error. He contends that the trial judge should have sua sponte declared a mistrial or given a curative instruction.

{¶17} Ridenbaugh cites to the following comments made during voir dire:

THE COURT: Uh -let's see. Do any of you know any of the people who I have introduced you to - involved in the trial? Uh - let's see. [Potential Juror]?

[POTENTIAL JUROR]: I work at the jail. I know of him. I don't think I've ever interacted with him ---

THE COURT: Okay.

[POTENTIAL JUROR]: -- so, just - I work at jail so –

THE COURT: All right.

[POTENTIAL JUROR]: -- (indiscernible) there and I know of him.

THE COURT: Okay

T. at 31. Later the same potential juror stated,

[POTENTIAL JUROR]: - - no. I mean, like I said, I work at the jail. I don't think I've personally had any interactions with this individual, so I believe I can be fair and impartial with the trial.

T. at 42. Ultimately, the juror was removed for cause. T. at 74.

**Standard of Review – Plain Error**

{¶18} A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated. *United States v. Dinitz*, 424 U.S. 600, 606-607 (1976), *citing United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover*, 35 Ohio St.3d 18 (1988); State *v. Hessler*, 90 Ohio St.3d 108, 115–116 (2000). An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 2014-Ohio-477, ¶35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶54 (5th Dist.).

{¶19} If no motion for a mistrial is requested at trial, the failure to grant a mistrial sua sponte is judged under a plain error standard. *See State v. Jones*, 115 Ohio App.3d 204, 208 (10th Dist. 1996) (finding no ineffective assistance of counsel for failing to request mistrial where alleged error did not rise to the level of plain error). *Accord, State v. Shaffer,* 2004-Ohio-3717, ¶18 (5th Dist.); *State v. Cowan*, 2024-Ohio-2028, ¶56 (3rd Dist.); *State v. Howard,* 2002-Ohio-2928, *3 (2nd Dist.); *State v. Johnson*, 2009-Ohio-3383, ¶30 (10th Dist.); *State v. Samueal*, 2023-Ohio-3322, ¶16 (1st Dist.).

{¶20} "To establish plain error, [Ridenbaugh] must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis

omitted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers*, 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are "conjunctive," meaning "all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, *citing State v. Barnes,* 94 Ohio St.3d 21, 27(2002). Intervention by an appellate court for plain error "is warranted only under exceptional circumstances to prevent injustice." Id. at ¶ 8, *citing State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus.

{¶21} The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. Id. at ¶ 17-18. *See, State v. Bond*, 2022-Ohio-4150, ¶7.

{¶22} In order to show that an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *State v. Rogers*, 2015-Ohio-2459, ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). *Bond* at ¶ 22.

{¶23} The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

> [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers*, ¶ 23; *Accord, State v. Perry*, 101 Ohio St.3d 118, 120 (2004).

**Issue for Appellate Review:** *Whether the trial judge's failure to sua sponte declare a mistrial was an obvious error that affected the outcome of the trial*

{¶24}  The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a defendant accused of a state criminal violation shall be tried before a panel of fair and impartial jurors. *See Duncan v. Louisiana*, 391 U.S. 145 (1968), and *State v. King*, 10 Ohio App.3d 161(1st Dist. 1983). *See, also,* Ohio Constitution, Article I, Section 10.

{¶25}  The conclusions reached in a case should be generated only by evidence and argument in open court, and not by any outside influence. *Patterson v. Colorado*, 205 U.S. 454 (1907). Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct. *State v. Taylor*, 73 Ohio App.3d 827, 831(4th Dist. 1991). *See also, Carr v. State*, 22 Ohio App. 78 (1st Dist. 1926); *Busick v. State*, 19 Ohio 198, 1850 WL 78(1850); and *State v. Carter*, 11 Ohio Dec. Rep. 123, 1890 WL 419(C.P. 1890); *State v. McMillen*, 2009-Ohio-210, ¶ 122 (5th Dist.). However, the United States Supreme Court has recognized:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable.... [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982); *United States v. Olano*, 507 U.S. 725, 738(1993).

**{¶26}** Ridenbaugh agrees that the Ohio Supreme Court has held a brief mention to the jury that the defendant had been arrested and in custody at some point for his aggravated murder charges did not erode the presumption of innocence in the same manner as appearing for trial in jail clothing. *State v. Williams*, 2003-Ohio-4164. However, Ridenbaugh cites *State v. Collins*, 2008-Ohio-3016 (8th Dist.) for the proposition that, in certain instances, comments by a trial judge that a defendant was in jail violated the defendant's right to a fair and impartial trial.

**{¶27}** We find Ridenbaugh's reliance on *Collins* to be misplaced. In *Collins*, the trial judge told the jury about Collins' "incarceration" for "security purposes." *Collins,* 2008–Ohio–3016 at ¶ 11, 16. In *Collins*, "the trial court not only made the initial error of commenting on [Collins's] incarceration, but he compounded the problem exponentially by adding that it was for 'security purposes.' Id. at ¶ 17." *State v. Robinson*, 2013-Ohio-4375, ¶ 72 (8th Dist.). In the case at bar, the comments were not made by the trial judge,

or even prompted by the state; rather, they were in response to a valid question posed to the entire venire during voir dire. The comments were isolated and the prospective juror who made the comments stated the fact he was familiar with Ridenbaugh from the juror's work at the jail would not influence the juror's decision. T. at 42. The comments did not imply that Ridenbaugh was in custody during the trial. "Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence," and while no specific curative instruction was requested or provided, the trial court fully explained the presumption of innocence in the jury instructions. *State v. Williams*, 2003-Ohio-4164, ¶ 75; *State v. Messenger*, 2021-Ohio-2044, ¶61 (10th Dist.).

**{¶28}** In addition, Ridenbaugh does not explain how the comments of the prospective juror prejudiced him at trial in light of the voluminous admissible evidence against him. Ridenbaugh has thus failed to demonstrate a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial.

**{¶29}** We cannot find the trial judge abused his discretion in not sua sponte declaring a mistrial. We find that Ridenbaugh has not demonstrated that any obvious error occurred in the failure to sua sponte declare a mistrial, or that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the trial judge's failure to sua sponte declare a mistrial.

**{¶30}** Ridenbaugh's First Assignment of Error is overruled.

II.

**{¶31}** In his Second Assignment of Error, Ridenbaugh contends that the prosecutor misstated evidence presented during his trial, denying him a fair trial.

Ridenbaugh concedes his trial attorney did not object to the comments; therefore, we must review this issue only for plain error. *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993).

**Standard of Appellate Review – Plain Error**

**{¶32}**    In *State v. Knuff*, the Supreme Court addressed the appropriate standard of review for addressing claims of prosecutorial misconduct during closing argument,

> We assess prosecutorial misconduct in closing arguments by asking "'whether the remarks were improper and, if so, whether they prejudicially affected [the] substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 (2000), *quoting State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). A conviction may be upheld in the face of a prosecutor's improper remarks when it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" regardless of the comments. *United States v. Hasting*, 461 U.S. 499, 511-512, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (new trial unwarranted despite prosecutor's improper argument because of "overwhelming evidence of guilt and the inconsistency of the scanty evidence tendered by the defendants").

2024-Ohio-902, ¶238.

**Issue for Appellate Review**: *Whether but for the prosecutor's remarks during closing arguments the jury would have acquitted Ridenbaugh*

**{¶33}** Ridenbaugh cites the following remarks made by the prosecutor during closing argument,

> [A]gain, this is a trap house - this is a drug house - drug trafficking - just drugs everywhere throughout the bedroom, throughout the house,

people fleeing out the back, people found in numerous locations in the house. Uh - Mr. Quick and Mr. Ridenbaugh located in bedrooms without their clothes on, sleeping. Uh - somebody in the basement -uh - throwing drugs on the ground. Um - the - Miss Jarrett found in the bathtub hiding - uh - it's just a drug - it's a drug world that this house was.

T. at 196. Then, in his rebuttal,

Um - but - out of those seven people in the house, only the Defendant was found- uh - lying in his bed, according to Detective Conley. Uh - only the Defendant requested personal items out of that room. Only the Defendant acknowledged his items being in that room. Uh -it was his room. It doesn't matter how many people where [sic] in the - uh - house - in the drug house based upon Detective Conley's investigation and his interview with -um - the Defendant.

T. at 205.

{¶34} The evidence presented during trial is that, "two people tried to run out the back, one was laying on the floor, two people were found hiding inside the residence." T. at 158. Quick and Ridenbaugh came outside upon police ordering them out. Id. Both Quick and Ridenbaugh "came out no shirt, no shoes, clearly looked like they had been asleep which is what we wanted for safety reasons." T. at 159-160. Police detained four of the seven occupants while they searched the house. Id. at 133; 158.

{¶35} Quick was found on the bed inside his bedroom. Id. at 159-160. Because he was worried about the few personal belongings he had in the bedroom getting stolen, Ridenbaugh asked Detective Conley if he could get him his shoes, watch, and backpack,

none of which contained any contraband, from his bedroom. Id. at 162- 163; 171; State's Exhibit's 3-E; 3-K; 3-C.

**{¶36}** Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing arguments. *State v. Hunt*, 2013-Ohio-5326, ¶ 18 (10th Dist.). We find the prosecutor's statements to be based on reasonable inferences to the evidence presented during the trial. Even if we were to assume arguendo that the prosecutor's statements were improper, Ridenbaugh is unable to demonstrate the type of prejudice necessary to require reversal based on plain error from prosecutorial misconduct. *See State v. Guade*, 2012-Ohio-1423, ¶ 20 (10th Dist.). "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. McAlpin,* 2022-Ohio-1567, ¶168, *citing State v. Treesh*, 90 Ohio St.3d 460, 464, (2001).

**{¶37}** Ridenbaugh was not deprived of a fair trial due to prosecutorial misconduct. The evidence against him was overwhelming, and there is little chance that absent the improper comments, the result of his trial would have been different. Any potential prejudice was mitigated by the trial court's instruction to the jury that closing arguments are not evidence. *McAlpin*, 2022-Ohio-1567, ¶ 188, *citing State v. Jones*, 91 Ohio St.3d at 353(2001).

**{¶38}** We find that Ridenbaugh has not demonstrated that any obvious error occurred in the trial as a result of the comments made by the prosecutor during his closing argument, or that there is a reasonable probability that the comments resulted in

prejudice, meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the comments made by the prosecutor during his closing argument.

{¶39}  Ridenbaugh's Second Assignment of Error is overruled.

III.

{¶40}  In his Third Assignment of Error, Ridenbaugh argues he was denied the effective assistance of trial counsel because counsel did not object to either the statements made by the prospective juror during voir dire [Assignment of Error I], or to incorrect statements made by the prosecutor during closing arguments [Assignment of Error II].

**Standard of Appellate Review**

{¶41}  To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶42}  To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; *Andtus v. Texas*, 590 U.S. 806, 813-814 (2020).

**{¶43}** A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697; *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶44}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347(1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244. *Accord, State v. Hale*, 2008-Ohio-3426, ¶233.

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different.*

**{¶45}** In our disposition of Ridenbaugh's First Assignment of Error, we found the trial judge's failure to declare a mistrial sua sponte based upon the comments of a prospective juror did not prejudice Ridenbaugh's substantial rights. Therefore, counsel was not deficient in failing to move for a mistrial.

**{¶46}** Even if counsel's performance at voir dire had been deficient, Ridenbaugh cannot establish prejudice under *Strickland*. He has failed to establish a reasonable probability that but for counsel's allegedly deficient performance at voir dire, the result of the trial would have been different. *See, e.g., State v. Adams*, 2004-Ohio-5845, ¶ 67.

**{¶47}** In our disposition of Ridenbaugh's Second Assignment of Error, we found that Ridenbaugh was not deprived of a fair trial due to prosecutorial misconduct. Therefore, Ridenbaugh cannot establish prejudice under *Strickland*. He has failed to establish a reasonable probability that but for counsel's allegedly deficient performance

by failing to object to the prosecutor's remarks, the result of the trial would have been different. *See, e.g., State v. Adams*, 2004-Ohio-5845, ¶ 67.

**{¶48}** Ridenbaugh's Third Assignment of Error is overruled.

IV.

**{¶49}** In his Fourth Assignment of Error, Ridenbaugh contends that his convictions for Aggravated Possession of Methamphetamine, and Possession of a Fentanyl-Related Compound as stated in Counts Three and Four of the indictment are against the manifest weight of the evidence.

**Standard of Review – Manifest Weight**

**{¶50}** The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶51}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d at 386–387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

**{¶52}** Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact

finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

**{¶53}** In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley,* 2012-Ohio-2179 at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

**{¶54}** When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14.

**{¶55}** The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281.

See, also, *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981). "The central question is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), *citing State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, *superseded by constitutional amendment on other grounds as stated in Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668(1997)." State v. Nicholson,* 2024-Ohio-604, ¶71. A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983); *Nicholson* at ¶71.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

{¶56} The drugs that supported the two counts decided by the jury were located on February 17, 2023 during the execution of a search warrant at a home at 555 Seroco Avenue. The drugs were recovered from the second bedroom in the home, which was identified as Ridenbaugh's. T. at 161; 170. Inside the room, a wooden box containing bags of suspected methamphetamine and marihuana was found. T. at 110-114; 122; State's Exhibits 3-J; 3-M; 3-N; State's Exhibit 4. A flashlight containing baggies of suspected methamphetamine and fentanyl stuffed inside was also recovered from this room. T. at 116-117; 122; State's Exhibits 3-V; 3-X; 5; 6. Items removed from the room associated with Ridenbaugh include a syringe, smoking bong and snorting straw. T. at

115-116; State's Exhibits 3-E; 3-P; and 3-R. Scales were also recovered from the room. T. at 116; State's Exhibit 3-T. A pizza box with Ridenbaugh's name was located inside the room. T. at 118; State's Exhibit 3-Y. A very small amount of additional methamphetamine, (.22 grams) which the police suspected was fentanyl, was also found on the bedside table T. at 123; 142; 148; State's Exhibits 9; 10; and 12. Ridenbaugh's shoes, watch, and backpack were recovered by the police at Ridenbaugh's request from his bedroom. Id. at 162- 163; 171; State's Exhibit's 3-E; 3-K; 3-C.

{¶57} Ridenbaugh does not dispute that drugs were found inside the second bedroom. He also does not dispute that he asked the police officers to retrieve his personal belongings from that room. Therefore, the only dispute concerns whether Ridenbaugh "knowingly possessed" the drugs.

*Knowingly*

{¶58} R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶59}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself. *State v. Johnson*, 56 Ohio St.3d 35, 38 (1978) *citing State v. Huffman,* 131 Ohio St. 27(1936): *State v. Rojas*, 64 Ohio St.3d 131, 139 (1992); State *v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001). (Footnote omitted.) Thus, "[t]he tests for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." Id. *citing State v. Adams*, 1995 WL 360247(4th Dist. June 8, 1995) and *State v. Paidousis*, 2001 WL 436079 (10th Dist. May 1, 2001). *See also, State v. Butler*, 2012–Ohio–5030, ¶ 25 (5th Dist.).

*Possession*

**{¶60}** R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶61}** Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176 (1989); *State v. Haynes*, 25 Ohio St.2d 264, 267(1971); *State v. Hankerson*, 70 Ohio St.2d 87(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332(1976). Dominion and control may be proven by

circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134 (8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler, supra; State v. Barr*, 86 Ohio App.3d 227, 235 (8th Dist. 1993); *State v. Morales*, 2005-Ohio-4714, ¶ 50 (5th Dist.); *State v. Moses*, 2004-Ohio-4943, ¶ 9 (5th Dist.). Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 2002-Ohio-3034, ¶13 (9th Dist.), *citing State v. Mann*, 93 Ohio App.3d 301, 308 (8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332. Multiple individuals may constructively possess a particular item simultaneously. *State v. Pitts*, 2000-Ohio-1986 (4th Dist.). The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982), *certiorari denied*, 459 U.S. 870 (1982). It would follow, therefore, that knowledge of drugs and drug paraphernalia in plain view in one's bedroom would be circumstantial evidence of possession.

{¶62} In *Ulster County Court v. Allen*, 442 U.S. 140 (1979), the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U.S. 142-143. The Court noted that the presumption was not mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the

presumption even if there was no affirmative proof offered in rebuttal by the accused. Id. at 160-162. Finally, the trial judge in *Allen* explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161.

**{¶63}** In the case at bar, a pizza box with Ridenbaugh's name on it was recovered from the second bedroom where the drugs were found. T. at 118; State's Exhibit 3-Y. The jury was shown photographs of the room associated with Quick and the room associated with Ridenbaugh as they existed on the day the search warrant was executed. Scales, a syringe, smoking bong and snorting straw are in plain view. T. at 115-116; State's Exhibits 3-E; 3-P; and 3-R; 3-T. Ridenbaugh admitted to the police that he periodically uses both methamphetamine and fentanyl throughout the day. Id. at 161-162. Ridenbaugh told the officer that the gun found on the bed in the room is a BB gun. T. at 161. Ridenbaugh's shoes, watch, and backpack were recovered by the police at Ridenbaugh's request from his bedroom. Id. at 162- 163; 171; State's Exhibit's 3-E; 3-K; 3-C.

**{¶64}** Circumstantial evidence is defined as "'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely,* 39 Ohio St.3d 147,150 (1988), *quoting* Black's Law Dictionary (5th Ed. 1979). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997).* "'[C]ircumstantial evidence is

sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 2005-Ohio-6046, ¶ 75, *quoting State v. Heinish*, 50 Ohio St.3d 231, 238(1990).

**{¶65}** The facts strongly suggest that Ridenbaugh was not the only person able to exercise dominion over the drugs. The jury could find that Ridenbaugh jointly possessed the drugs with Quick. In the case at bar, ample circumstantial evidence existed that would allow the trier of fact to conclude that Ridenbaugh constructively possessed the drugs found in the second bedroom associated with him. As long as there is substantial evidence going to all the essential elements of the case the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998); *State v. Nicholson,* 2024-Ohio-604, ¶71.

**{¶66}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the jury lost their way and created a manifest miscarriage of justice. We do not find the jury erred when they found Ridenbaugh guilty. Taken as a whole, the testimony and record contain ample evidence of Ridenbaugh's responsibility for the alleged offenses. The fact that the jury chose to believe the testimony of the state's witnesses does not, in and of itself, render his conviction against the manifest weight of the evidence. While Ridenbaugh is certainly free to argue that he did not know there were drugs inside the wooden box or the flashlight, on a full review of the record we cannot say that the jury clearly lost their way or created a manifest injustice by choosing not to believe his argument and explanations. The jury was able to observe the testimony subject to

cross-examination, see photographs taken when the search warrant was executed, as well as hear Ridenbaugh's explanation and arguments.

{¶67} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the offenses for which Ridenbaugh was convicted. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction.

{¶68} Ridenbaugh's Fourth Assignment of Error is overruled.

{¶69} The judgment of the Licking County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur

[Cite as *State v. Ridenbaugh*, 2024-Ohio-3072.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TEDDY E. RIDENBAUGH, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2023 CA 00087 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. CRAIG R. BALDWIN