[Cite as *State v. Roman-Navarre*, 2025-Ohio-3156.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2024CA00185 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024-CR-0942 |
| MICHAEL BRANDON ROMAN-NAVARRE | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: September 4, 2025 |

**BEFORE:** DAVID M. GORMLEY, P.J., CRAIG R. BALDWIN, J., KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** KYLE L. STONE, for Plaintiff-Appellee; VICKI L. DESANTIS for Plaintiff-Appellee; TONY DALAYANIS, for Defendant-Appellant.

OPINION

*Popham, J.*

{¶1} Defendant-Appellant Michael Brandon Roman-Navarre ("Roman-Navarre") appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas. For the reasons that follow, we affirm.

***Facts and Procedural History***

{¶2} On May 7, 2024, a Stark County Grand Jury indicted Roman-Navarre on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)/(B)(3), a felony of the third degree. Roman-Navarre's jury trial commenced on October 16, 2024.

**The Initial Disclosure**

{¶3}    The indictment originated from a disclosure made by the minor complainant, C.S., to Kristie Miller, a counselor and mentor at Hannah's House in Stark County.  Miller testified that she began mentoring C.S. in March 2023.  1BT. at 22[1].

{¶4}    Miller testified that she promised to take C.S. to a nail salon if C.S. attended school for five consecutive days.  When Miller arrived to fulfill that promise, she observed that C.S.'s nails had already been done. 1BT. at 23-24.

{¶5}    Because Miller knew that C.S. and her family lacked the financial resources for such services, Miller asked C.S. about the nails.  1BT. at 24.  C.S. responded that a man named "Michael" had paid for them in exchange for a sexual favor.  1BT. at 26.

{¶6}    Following this disclosure, Miller reported her concerns to the Director of Hannah's House, Patti Hostetler.  1BT. at 24-26.  Hostetler then informed C.S.'s mother, P.P. ("Mother").

**Mother's Report to Police**

{¶7}    After being informed of her daughter's disclosure, Mother took immediate action - on March 16, 2023, she filed a police report with the Massillon Police Department. 1BT. at 28.

{¶8}    Mother testified that she met with Detective Trsinar and turned over C.S.'s cell phone, and identified contact information, text messages, and call logs between C.S. and someone listed as "Bestie." 1BT. at 29, 31, 42-43; State's Exhibit 1A. Mother testified that she did not know who "Bestie" was.  1BT. at 31.

---

[1] For clarity, the transcript of Roman-Navarre's jury trial will be referred to as "__T.__" signifying the volume and page number.

{¶9} C.S. provided Mother information regarding the identity of "Bestie" by sending Mother a Snapchat photo. 1BT. at 31, 34; State's Exhibit 1G. Mother did not know the people depicted in the photo. 1BT. at 35. When Mother confronted C.S. about the photo, C.S. did not want to cooperate and the conversation escalated into a heated argument. 1BT. at 34-35. Police arrived, and C.S. was removed from the home. 1BT. at 36.

**C.S.'s Testimony**

{¶10} The State next called C.S., who was born in 2009. She testified as to how she met Roman-Navarre and to the nature of their relationship. 1BT. at 76.

{¶11} According to C.S., in March 2023 she was walking when Roman-Navarre stopped his red truck, got out, and asked for C.S.'s phone number and age. 1BT. at 78-79, 107-108. When C.S. told Roman-Navarre she was 13 years old, he responded that they could "just be friends." 1BT. at 79.

{¶12} C.S. testified that the two exchanged phone numbers, and C.S. saved Roman-Navarre's contact information in her phone as "Bestie." 1BT. at 79, 81, 109-110. That same night, Roman-Navarre began texting C.S. *Id.*

{¶13} C.S. testified that, a few days later, Roman-Navarre picked her up and drove her to his house, where they smoked marijuana and drank alcohol.[2] 1BT. at 80, 83, 110-111.

{¶14} C.S. testified that this relationship continued for about a year. During that time, Roman-Navarre provided her with vapes, marijuana, and drugs, and in exchange he demanded sexual favors. 1BT. at 80, 112.

---

[2] C.S. denied drinking more than just a sip of alcohol.

{¶15} C.S. testified that although she initially refused, Roman-Navarre persisted - begging, offering money, and later adding drugs and alcohol. 1BT. at 81, 83-84, 89. While she refused intercourse, C.S. admitted to performing oral sex on Roman-Navarre three or four times, including once at a car wash. 1BT. at 84, 86, 93, 121.

{¶16} C.S. further testified that Roman-Navarre took her to get her nails done and that she sent him a picture afterward. 1BT. at 89-90, 119; State's Exhibit 1B. On one occasion, he showed her a pistol and made comments implying harm, which made her fearful, although he never directly threatened her. 1BT. at 94, 144.

{¶17} C.S. identified Roman-Navarre in court as the person to whom she gave oral sex. 1BT. at 96.

**The Investigation**

{¶18} Law enforcement and child protective services conducted a joint investigation following these allegations.

{¶19} Alicia Farkas, a Stark County Children's Services ("SCCS") supervisor, testified that she oversees all child sexual abuse cases in Stark County. 1BT. at 48-49. Because the original caseworker passed away, Farkas reviewed that worker's notes and documentation. 1BT. at 52.

{¶20} Farkas testified that SCCS received a hotline call in March 2023 reporting sexual abuse of C.S. 1BT. at 51-52. A forensic interview was scheduled for March 22, 2023, at the Children's Network. 1BT. at 52, 54.

{¶21} After reviewing the forensic interview, Farkas testified that C.S. was withdrawn and irritable but ultimately disclosed abuse, identifying the perpetrator as "Michael," later clarifying the name as "Michael O'Neil." 1BT. at 56, 68, 73-74.

{¶22} To corroborate this disclosure, the State introduced testimony from Lieutenant Nicholas Antonides of the Massillon Police Department. Antonides testified in place of Detective Trsinar, who suffered a traumatic brain injury and could not appear. 2T. at 98-99. Antonides stated that he worked closely with Trsinar during the investigation and was familiar with the evidence. 2T. at 99, 105.

{¶23} Investigators used a TransUnion Location Service (TLO), database search, which linked the "Bestie" phone number to Roman-Navarre. The search confirmed his birth date as July 18, 1997, making him 25 years old at the time of the alleged conduct. 2T. at 89-90, 96-97, 103, 128.

{¶24} Law enforcement also obtained surveillance video from the nail salon and a car wash. The car wash footage showed a red truck entering a wash bay at 2646 Lincoln Way West, Massillon, Ohio - the location C.S. identified as the site of one sexual act. 2T. at 102-103. Investigators confirmed that this incident occurred on March 5, 2023, and that the nail salon visit took place on March 13, 2023. 2T. at 123-127.

**Expert Testimony**

{¶25} The State further presented expert testimony to establish the nature and impact of the abuse.

{¶26} First, the trial court qualified Alissa Edgein, a pediatric nurse practitioner, as an expert in pediatric nursing and child sexual abuse. 2T. at 29. Edgein testified that C.S. disclosed performing oral sex and manual stimulation on a man named Michael in exchange for money and a manicure. 2T. at 39.

{¶27} Edgein testified that C.S. described Michael as "white, fat, ugly, a beard, blue eyes, brown hair that was a little bit off his head, [and] capped teeth." 2T. at 40.

Edgein testified that C.S. said Michael initially offered friendship but later begged for sexual favors, eventually offering money—up to $200.00—as well as Xanax and marijuana. 2T. at 42-43.

{¶28} Edgein testified that C.S. recounted an incident at a car wash where "no condom was used, sperm came out of his penis and went on her hand, and she described it as disgusting. She would use a napkin or hand sanitizer to wipe it off." 2T. at 43. She added that his penis was uncircumcised, requiring her to pull back the skin. 2T. at 46.

{¶29} Edgein concluded that C.S.'s evaluation was consistent with child sexual abuse and human trafficking. 2T. at 53.

{¶30} Second, the parties stipulated to the expertise of Carrie Schnirring, a psychological assistant specializing in child sexual abuse and trauma. 2T. at 133. SCCS referred C.S. to Schnirring, who conducted a trauma assessment over three sessions in June and July 2023. 2T. at 134, 151; State's Exhibit 5.

{¶31} Schnirring testified to C.S.'s recount of drugs, money, and sexual activity that was consistent with C.S.'s trial testimony. Schnirring testified that she diagnosed C.S. with post-traumatic stress disorder and disruptive mood dysregulation disorder, recommending trauma therapy. 2T. at 157-158, 169-170.

**Verdict and Sentence**

{¶32} After considering all the evidence, the jury found Roman-Navarre guilty of unlawful sexual conduct with a minor, a third-degree felony under R.C. 2907.04(A)/(B)(3). The trial court sentenced Roman-Navarre to 60 months in prison and classified him as a Tier II sex offender.

## Assignments of Error

{¶33} Roman-Navarre raises nine assignments of error for our consideration,

{¶34} "I. THE TRIAL COURT ERRED IN FAILING TO DECLARE A MISTRIAL FOLLOWING A WITNESS'S REFERENCE TO THE DEFENDANT'S INCARCERATION, IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."

{¶35} "ASSIGNMENTS OF ERROR II, III, AND IV: THE TRIAL COURT ERRED BY ALLOWING THE STATE TO REFRESH THE ALLEGED VICTIM'S MEMORY OFF THE RECORD AND OUTSIDE THE PRESENCE OF THE JURY, AND BY FAILING TO ADMIT THE RECORDED FORENSIC INTERVIEW, IN VIOLATION OF THE CONFRONTATION CLAUSE AND EVIDENTIARY RULES 612, 613, AND 803(4)."

{¶36} "V. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT."

{¶37} "VI. THE TRIAL COURT ERRED BY ALLOWING INADMISSIBLE EVIDENCE, INCLUDING UNAUTHENTICATED VIDEOS AND TEXT MESSAGES."

{¶38} "VII. THE STATE FAILED TO ESTABLISH VENUE IN STARK COUNTY, AND THE TRIAL COURT ERRED BY NOT DISMISSING THE CHARGES FOR LACK OF JURISDICTION."

{¶39} "VIII. VIA ALL THE CUMULATIVE ERRORS APPELLANT WAS DENIED A FAIR TRIAL."

{¶40} "IX. VIA A REVIEW OF ALL THE EVIDENCE, APPELLANT IS NOT GUILTY OF THE CRIME CHARGED."

## I. – Mention of Roman-Navarre's Incarceration

{¶41} In his first assignment of error, Roman-Navarre claims that a reference by a State's witness that Roman-Navarre had been "incarcerated" compromised his presumption of innocence to such a degree that he was denied his right to a fair trial. He contends that the trial judge should have sua sponte declared a mistrial. We disagree.

{¶42} During trial, K.M., a former girlfriend of Roman-Navarre, testified that the couple worked together at a restaurant until "he was no longer allowed to work there." 2T. at 14. The prosecutor then asked K.M., "Okay. And did he find a job elsewhere?" *Id.* K.M. answered, "He actually became incarcerated, so he wasn't…." *Id.* Defense counsel objected before K.M. completed her answer. *Id.* The court sustained the objection. *Id.* At sidebar, the prosecutor agreed the answer should be stricken and told the court that she did not expect the witness to say Roman-Navarre had been incarcerated. *Id.* at 15. Defense counsel did not move for a mistrial; rather, counsel asked for a curative instruction, which the court provided. *Id.*

## Standard of Review – Plain Error

{¶43} A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated. *United States v. Dinitz*, 424 U.S. 600, 606-607 (1976), citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). The granting of a mistrial rests within the sound discretion of the trial court, in recognition that the trial judge is in the best position to determine whether the situation at hand warrants such action. *State v. Glover*, 35 Ohio St.3d 18 (1988); *State v. Hessler*, 90 Ohio St.3d 108, 115-116 (2000). An abuse of discretion can be found where the reasons given by the court for its action are clearly

untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.).

{¶44} If no motion for a mistrial is requested at trial, the failure to grant a mistrial sua sponte is judged under a plain error standard. *See State v. Jones*, 115 Ohio App.3d 204, 208 (7th Dist. 1996) (finding no ineffective assistance of counsel for failing to request mistrial where alleged error did not rise to the level of plain error). *Accord State v. Shaffer,* 2004-Ohio-3717, ¶18 (5th Dist.); *State v. Cowan*, 2024-Ohio-2028, ¶ 56 (3rd Dist.); *State v. Howard*, 2002-Ohio-2928, *3 (2d Dist.); *State v. Johnson,* 2009-Ohio-3383, ¶ 30 (10th Dist.); *State v. Samueal*, 2023-Ohio-3322, ¶ 16 (1st Dist.); *State v. Ridenbaugh,* 2024-Ohio-3072, ¶¶ 18-19 (5th Dist.).

{¶45} "To establish plain error, [Roman-Navarre] must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis omitted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are "conjunctive," meaning all three must apply to justify an appellate court's intervention. *Bailey* at ¶ 9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Intervention by an appellate court for plain error is warranted only under exceptional circumstances to prevent a manifest miscarriage of justice. *Bailey* at ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶46} The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice"; whereas, under harmless-error review, the State bears the burden to demonstrate that the error did not affect the defendant's substantial rights. *Id. See also State v. Bond*, 2022-Ohio-4150, ¶ 7; *State v. Ridenbaugh*, 2024-Ohio-3072, ¶¶ 20-21 (5th Dist.).

{¶47} The *Rogers* Court reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. *Rogers* at ¶ 23. The Supreme Court held:

> [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers*, ¶ 23; *Accord State v. Perry*, 101 Ohio St.3d 118, 120 (2004).

{¶48} The Supreme Court of Ohio held that a brief mention to the jury that the defendant had been arrested and in custody at some point for his aggravated murder charges did not erode the presumption of innocence in the same manner as appearing for trial in jail clothing. *State v. Williams*, 2003-Ohio-4164.

{¶49}   To be sure, the comment regarding Roman-Navarre's incarceration was not made by the trial judge or even prompted by the State; rather, the comment was in response to a valid question posed to a witness.  The comment did not imply that Roman-Navarre was in custody during the trial.  Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence, a curative instruction was requested and provided, and the trial court fully explained the presumption of innocence in the jury instructions.  *See State v. Williams*, 2003-Ohio-4164, ¶ 75; *State v. Messenger*, 2021-Ohio-2044, ¶ 61 (10th Dist.).

{¶50}   Moreover, Roman-Navarre does not explain how the witness' comment prejudiced him at trial given the other admissible evidence against him.

{¶51}   We find that Roman-Navarre has not demonstrated that any obvious error occurred in the failure to sua sponte declare a mistrial, or that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial.

{¶52}   We decline to find a manifest injustice warranting the exceptional circumstance of finding plain error in the trial judge's failure to sua sponte declare a mistrial in this case.

{¶53}   Roman-Navarre's first assignment of error is overruled.

## II., III., IV.

**Procedural Issue**

{¶54}   Before turning to Roman-Navarre's second, third, and fourth assignments of error, we must first address a procedural issue.  App.R. 16(A)(7) requires an appellant to present a separate argument for each assignment of error.  Roman-Navarre did not

comply with App.R. 16(A)(7). Instead, he offers a single argument for all three assignments of error.

{¶55} Although an appellate court may jointly consider assignments of error that are related, the parties do not have the same option and are required to separately present and argue each assignment of error. *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.,* 2011-Ohio-107, ¶ 30 (8th Dist.); *Hyde v. Sherwin-Williams Co.*, 2011-Ohio-4234, ¶ 12 (8th Dist.); *State v. Williams,* 2024-Ohio-5578, ¶ 107 (5th Dist.). Under App.R. 12(A)(2), we may disregard any assignment of error not separately argued. Courts have repeatedly noted this rule. *See Comisford v. Erie Ins. Prop. & Cas. Co.*, 2011-Ohio-1373, ¶ 29 (4th Dist.); *Newman v. Enriquez*, 171 Ohio App.3d 117, ¶ 18 (4th Dist. 2007); *Hyde v. Sherwin-Williams Co.*, 2011-Ohio-4234, ¶ 12 (8th Dist.); *Pahoundis v. Beamer*, 2009-Ohio-6881, ¶ 65 (5th Dist.); *State v. Emch*, 2023-Ohio-3553, ¶ 16 (5th Dist.); *State v. Higgins*, 2025-Ohio-2122, ¶ 54 (5th Dist.).

{¶56} Although we could summarily overrule these assignments, we decline to do so. In the interest of justice, we will address the merits of Roman-Navarre's second, third and fourth assignments of error. *See Emch*, 2023-Ohio-3553, ¶ 17; *State v. Williams,* 2024-Ohio-5578, ¶107 (5th Dist.); *Higgins,* 2025-Ohio-2122, ¶ 54.

{¶57} We note that each assignment of error concerns the trial testimony of C.S. regarding the March 22, 2023, forensic interview.

**C.S.'s Trial Testimony**

{¶58} C.S. admitted she had participated in a forensic interview about her allegations against Roman-Navarre. 1BT. at 95, 123. But when defense counsel questioned her about that interview, her answers reflected reluctance and fading memory:

I don't know. I told the forensic interview lady whatever. I wanted out of there. I didn't care. I wanted nothing to do with that situation. I was in foster care. I didn't care about any of that. I don't know what I told her. This was over two years ago. I don't have the answers you want.

1BT. at 125.

{¶59} C.S. repeatedly claimed she could not remember what she said during the interview. 1BT. at 127. When asked if watching the interview might refresh her recollection, she answered, "I really don't want to." When C.S. was pressed further, she explained:

No, but I don't want to. I want to leave the room if that happens. I don't want to relive that…Because I don't want to rehear everything that I've done with him. I don't care what anything is said in that. I don't even want to be here today.

1BT. at 127.

{¶60} C.S. refused to watch the interview outside the jury's presence. 1BT. at 128-130. At one point, she stated flatly, "I'm not answering anything about the forensic interview." 1BT. at 131.

{¶61} At sidebar, the prosecutor suggested speaking with C.S. in the hallway to encourage cooperation. The court proposed excusing the jury and playing the video. The prosecutor indicated she would attempt to speak with C.S., and defense counsel agreed. 1BT. at 132-134. Following a break, C.S. persisted in claiming a lack of memory and continued to refuse to view the interview. *Id.* at 139-147.

{¶62} Yet, on redirect examination, her memory shifted. C.S. testified that Roman-Navarre ejaculated:

> I don't really remember much of it at all. I just—when we talked and went back over the forensic interview, you [the prosecutor] brought it back to my thought. I really didn't remember anything until we talked about the forensic interview just a second ago.

1BT. at 150.

{¶63} C.S. elaborated:

> When you [the prosecutor] brought it up and told me what I said in the forensic, I remembered that I actually did remember cleaning off his sperm off my hands with the hand sanitizer that was in the console of his car.

*Id.*

{¶64} The March 22, 2023, forensic interview was never played for the jury and was not admitted into evidence.

**Appellant's Contentions**

{¶65} Roman-Navarre's second, third, and fourth assignments of error all stem from C.S.'s trial testimony. First, he argues that the State improperly coached C.S. outside the jury's presence, violating his right to confrontation. Next, he asserts the forensic interview should have been admitted under Evid.R. 803(4) as a statement made for purposes of medical diagnosis or treatment. Finally, he maintains that the interview was admissible, and essential to a fair trial, to refresh recollection and for impeachment under Evid.R. 612 and Evid.R. 613. We disagree.

**Plain Error**

{¶66} Roman-Navarre did not object during the trial to raise any of the issues now presented in these assignments of error. Normally, an appellate court need not consider error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court. *State v. Williams*, 51 Ohio St.2d 112, 117 (1977), vacated in part on other grounds, *Williams v. Ohio,* 438 U.S. 911 (1978), as stated in *State v. Issa,* 93 Ohio St.3d 49, 56 (2001).

{¶67} Accordingly, a claim of error not called to the attention of the trial court is usually deemed to be forfeited absent plain error. However, plain errors or defects affecting substantial rights may be noticed although not brought to the attention of the trial court. Crim.R. 52(B).

{¶68} Crim.R. 52 grants appellate courts limited authority to correct trial errors. Crim.R. 52(A) applies to preserved errors and allows reversal only if the error affected substantial rights. Crim.R. 52(B) governs unpreserved errors and permits reversal only if the error was plain and affected substantial rights. As noted above, under plain-error review the burden is on the defendant. *State v. Jones*, 2020-Ohio-3051, ¶¶ 17-18. *See also State v. Bond*, 2022-Ohio-4150, ¶ 7.

{¶69} To establish plain error under Crim.R. 52(B), a defendant must show: (1) an error occurred; (2) the error was obvious; and (3) the error affected the outcome of the proceeding. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers*, 2015-Ohio-2459, ¶ 22; *accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. All three elements must be met. *Bailey*, ¶ 9, *citing State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶70} Because Roman-Navarre does not claim plain error on appeal, we need not consider it. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 17-20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gavin*, 2015-Ohio-2996, ¶ 25 (4th Dist.), *citing Wright v. Ohio Dept. of Jobs & Family Servs*., 2013-Ohio-2260, ¶ 22 (9th Dist.) (when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf); *State v. McCreary*, 2022-Ohio-2899, ¶ 65 (5th Dist.); *State v. Carbaugh*, 2023-Ohio-1269, ¶ 67 (5th Dist.); *State v. Fitts*, 2020-Ohio-1154, ¶ 21 (6th Dist.); *Simon v. Larreategui*, 2022-Ohio-1881, ¶ 41 (2d Dist.).

{¶71} Nevertheless, even if we were to consider Roman-Navarre's claims under plain error review, they would not succeed.

## II. - Confrontation Clause

{¶72} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. The primary purpose of this guarantee is to prevent the use of unchallenged testimony to secure a conviction - a safeguard that applies in both federal and state prosecutions. *Mattox v. United States*, 156 U.S. 237, 242 (1895); *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004); *see also State v. Davis*, 2024-Ohio-1504, ¶ 24 (5th Dist.). The right of confrontation includes the opportunity to have a witness physically appear in court, testify under oath, and be subject to cross-examination. *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990).

{¶73} In this case, C.S. testified at trial and was subject to cross-examination. Defense counsel specifically questioned C.S. about her conversation with the prosecutor.

1BT. at 152-154. The trial court imposed no limitations on Roman-Navarre's cross-examination regarding the forensic interview or discussions with the prosecutor. 1BT. at 133. Roman-Navarre has not shown that the prosecutor's discussion with C.S. was in any way improper. Both the trial court and defense counsel agreed to allow the prosecutor to speak with C.S. to persuade her to become a more cooperative witness.

{¶74} Roman-Navarre has not shown that an error occurred, that it was plain, or that it affected his substantial rights. We cannot conclude that, but for the alleged error of improper coaching, the outcome of the trial would have been different. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66; *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶75} Accordingly, we decline to find a manifest injustice warranting plain error reversal based on Roman-Navarre's right to confrontation following the prosecutor's discussion with C.S.

### III. - Failure to Admit Forensic Interview – Evid.R. 803(4)

### IV. - Failure to Admit Forensic Interview – Evid.R. 612 and 613

{¶76} Roman-Navarre next argues that the forensic interview was admissible under Evid.R. 804 as a statement made for purposes of medical diagnosis and treatment. He further contends that the interview could have been used to refresh C.S.'s recollection – Evid.R. 612 - and for impeachment – Evid.R. 613.

{¶77} Again, the record does not reflect that either party requested admission of C.S.'s forensic interview. Because no such request was made by either side, the trial court could not have erred by failing to admit it. Defense counsel did not request admission of the forensic interview as a statement for purposes of medical diagnosis or treatment – as a hearsay exception under Evid.R. 803(4). Nor did defense counsel

request that he be permitted to play the video of the forensic interview for impeachment or to refresh C.S.'s recollection. The trial court allowed defense counsel to cross-examine C.S. concerning what counsel believed were inconsistencies between her trial testimony and her prior statements during the forensic interview.

{¶78}   Regarding Roman-Navarre's Evid.R. 612 argument, C.S.'s inability to recall what occurred during the forensic interview does not amount to a Confrontation Clause violation.  In *United States v. Owens*, 484 U.S. 554 (1988), the Supreme Court considered a case in which an adult victim, who suffered memory loss after a severe beating, identified his assailant while hospitalized.  That identification was admitted at trial.  During cross-examination, however, the victim could not recall details of the attack or the identification.  *Id.* at 556.  The Ninth Circuit found a Confrontation Clause violation; the Supreme Court reversed, holding that "the Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 559 quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987), and *Delaware v. Fensterer*, 474 U.S. 15, 19-20 (1985).  (Emphasis in original).

{¶79}   In short, a witness's inability to recall either the underlying events or the circumstances surrounding a prior statement generally does not implicate the Sixth Amendment.  *Owens*, 484 U.S. at 558.[3]

---

[3] *But see Douglas v. Alabama*, 380 U.S. 415 (1965) that reversed a conviction in which the prosecution read into the record an alleged confession of the defendant's supposed accomplice, who refused to testify on self-incrimination grounds.  The confrontation problem arose in that case because the accomplice could not be cross-examined as to his prior statement.

{¶80} The record establishes that C.S. testified in open court and was subject to full and unrestricted cross-examination. The Sixth Amendment does not guarantee cross-examination that is effective in every respect, only the opportunity to confront the witness, which Roman-Navarre received. Similarly, because the defense never moved to admit the forensic interview, the trial court did not err in failing to admit it.

{¶81} Here, Roman-Navarre has not demonstrated that a plain-error occurred relative to the refreshing C.S.'s recollection, or admission of the forensic interview under Evid.R. 803(4), Evid.R. 612, and Evid.R. 613., or that plain-error affected his substantial rights. We cannot conclude that, but for the alleged errors, the result of the trial would have been different. *McAlpin*, 2022-Ohio-1567, ¶ 66; *Rogers*, 2015-Ohio-2459, ¶ 22.

{¶82} We therefore reject these arguments and overrule Roman-Navarre's second, third and fourth assignments of error.

### V. – Ineffective Assistance of Counsel

**Appellant's Contentions**

{¶83} In his fifth assignment of error, Roman-Navarre argues that his conviction must be reversed because he was denied the effective assistance of trial counsel. Roman-Navarre argues specific deficiencies include failure to file an alibi defense, failure to move for mistrial after the jury heard testimony regarding his incarceration (see discussion above), failure to challenge venue (see discussion below), failure to object to inadmissible hearsay, failure to properly admit the forensic interview (see discussion above), failure to investigate and present exculpatory evidence, and failure to object to leading questions. We disagree.

{¶84} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense, rendering the result of the proceeding unreliable or fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687-688 (1984); *see also State v. McKnelly,* 2024-Ohio-2696, ¶¶ 46-47 (5th Dist.); *State v. Ridenbaugh,* 2024-Ohio-3072, ¶¶ 41-42 (5th Dist.).

{¶85} To establish prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland* at 694; *Andrus v. Texas,* 590 U.S. 806, 813-814 (2020). Failure to prove either prong of an ineffective assistance of counsel claim defeats the claim. *Strickland* at 697; *State v. Madrigal,* 87 Ohio St.3d 378, 389 (2000).

**Failure to File an Alibi Defense**

{¶86} Roman-Navarre first contends counsel was ineffective for failing to assert an alibi defense. (Appellant's brief at 5).

{¶87} The record contains no evidence that Roman-Navarre had an alibi for any relevant time period set forth in the indictment. A reviewing court may not add matter to the record that was not part of the trial proceedings and then decide the appeal based on that new material. *State v. Hooks,* 92 Ohio St.3d 83 (2001), citing *State v. Ishmail,* 54 Ohio St.2d 402 (1978). Likewise, factual assertions in an appellate brief cannot enlarge the record. *Dissolution of Doty v. Doty,* 1980 WL 350992 (4th Dist. Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards,* 120 Ohio App. 55, 59 (10th Dist.1963); see also *North v. Beightler,* 2006-Ohio-6515, ¶ 7.

{¶88} App.R. 16(A)(7) requires that an appellant's brief include:

An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

{¶89} Likewise, App.R. 12(A)(2) authorizes this Court to disregard an assignment of error where "the party raising it fails to identify in the record the error on which the assignment of error is based...as required under App.R. 16(A)." *Courie v. ALCOA*, 162 Ohio App.3d 133, ¶ 17 (8th Dist. 2005), quoting former App.R. 12(B)(2). *See also Smith v. Akron Appeals Bd. of Dept. of Public Health*, 2003-Ohio-93, ¶¶ 26-27 (9th Dist.).

{¶90} The rationale for these requirements is clear: appellate courts cannot be expected to search the record to develop arguments on a party's behalf. As the Seventh Circuit memorably observed, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991); *see also Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.,* 309 F.3d 433, 436 (7th Cir. 2002); *Coolrington v. Dolak,* 142 F.4th 884, 897 (6th Cir. 2025).

{¶91} We find no evidence in the record that Roman-Navarre had an alibi defense, nor did he cite where any such evidence can be found. Accordingly, Roman-Navarre has failed to demonstrate prejudice from counsel's failure set forth an alibi defense.

**Failure to Move for a Mistrial**

{¶92}   Roman-Navarre next argues counsel was ineffective for failing to move for a mistrial after a State's witness referenced that Roman-Navarre had been "incarcerated." (Appellant's brief at 5).

{¶93}   As discussed in our resolution of the first assignment of error, the reference to Roman-Navarre's incarceration was inadvertent, brief, and immediately addressed with a curative instruction. Likewise, we previously determined that the comment did not affect Roman-Navarre's substantial rights or deprive him of a fair trial.

{¶94}   Because a motion for mistrial would not have been granted under these circumstances, Roman-Navarre cannot demonstrate prejudice from counsel's failure to make such a motion.

**Failure to Challenge Venue**

{¶95}   Roman-Navarre argues that counsel was ineffective for failing to challenge venue in Stark County. (Appellant's brief at 5).

{¶96}   As discussed in our resolution of the seventh assignment of error, evidence presented at trial established the location of one sexual incident being at a car wash in "Massillon, Stark County, Ohio."  2T. 102.

{¶97}   Thus, the State presented sufficient evidence that the offense occurred in, and venue was therefore properly established in, Stark County.  As such, any challenge to venue would not have been successful, and Roman-Navarre cannot demonstrate prejudice from counsel's failure to challenge venue.

**Failure to Object to Alleged Hearsay and Expert Testimony**

{¶98} Roman-Navarre also claims counsel was ineffective for failing to object to inadmissible hearsay and to nurse testimony allegedly offered as an expert opinion. (Appellant's brief at 5).

{¶99} This argument is undeveloped. Roman-Navarre identifies neither the witness nor the specific testimony, nor does he cite the record.

{¶100} Courts are not obliged to construct arguments on behalf of the parties. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 2009-Ohio-3299, ¶ 14 (4th Dist.), *quoting State v. Carman*, 2008-Ohio-4368, ¶ 31 (8th Dist.). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 2009-Ohio-1211, ¶ 16 (9th Dist.), quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist. 1996); *State v. Colston,* 2020-Ohio-3879, ¶ 58 (5th Dist.).

{¶101} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988); *Abon, Ltd. v. Transcontinental Ins. Co*., 2005-Ohio-3052, ¶ 100 (5th Dist.); *State v. Miller*, 2004-Ohio-4636, ¶ 41 (5th Dist.). "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co*., 127 Ohio St. 351, 356 (1933); *State v. Colston*, 2020-Ohio-3879, ¶ 59 (5th Dist.); *State v. Crank,* 2015-Ohio-1909 (5th Dist.).

{¶102} Moreover, failure to object, without a showing of prejudice, does not amount to ineffective assistance. *State v. Fears*, 86 Ohio St.3d 329, 347 (1999).

{¶103} Because Roman-Navarre identifies neither the witness nor the specific testimony, and he does not cite the record to show where any error occurred, Roman-Navarre shows neither error nor prejudice here.

**Failure to Admit Forensic Interview of C.S.**

{¶104} Roman-Navarre next argues his attorney was ineffective because he did not seek to admit the forensic interview of C.S.

{¶105} Defense counsel's decision not to introduce the forensic interview of C.S., and instead rely on cross-examination, constitutes a tactical choice. Strategic decisions, even if debatable, do not establish ineffective assistance of counsel. *State v. Hoffner,* 2004-Ohio-3430, ¶ 45; *State v. Phillips,* 74 Ohio St.3d 72, 85 (1995). The record reflects that counsel was not restricted in cross-examining C.S. about the interview. 1BT. at 133.

{¶106} Roman-Navarre has not shown how the failure to admit the forensic interview prejudiced his defense.

**Failure to Investigate Girlfriend's Testimony**

{¶107} Roman-Navarre next claims counsel failed to investigate communications between his girlfriend and C.S.'s mother and to obtain the girlfriend's cell phone records. (Appellant's brief at 7).

{¶108} The record contains no proffer of the alleged testimony or records. Without such evidence, Roman-Navarre cannot demonstrate that this testimony would have materially aided his defense or that the trial outcome would have been different.

**Failure to Object to Leading Questions**

{¶109} Roman-Navarre finally asserts that counsel was ineffective for failing to object to the prosecutor's leading questions, primarily those concerning his relationship with C.S. 1BT. at 78.

{¶110} Evid.R. 611(C) grants trial courts discretion to allow leading questions when necessary to develop testimony.  Because of this discretion, the Supreme Court of Ohio has held that failing to object to leading questions does not amount to ineffective assistance.  *State v. Jackson*, 92 Ohio St.3d 436, 449 (2001).

{¶111} Each allegation of ineffective assistance fails either because counsel's performance was reasonable or because Roman-Navarre cannot demonstrate prejudice.

{¶112} Accordingly, Roman-Navarre's fifth assignment of error is overruled.

## VI. Authentication of Text Messages and Video Evidence

{¶113} In his sixth assignment of error, Roman-Navarre argues that the trial court erred by admitting text messages and video evidence without proper authentication. (Appellant's Brief at 8).

### Standard of Review – Admissibility of Evidence

{¶114} A trial court has broad discretion in determining the admissibility of evidence, provided that such discretion is exercised in accordance with the rules of procedure and evidence. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991); *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.  Even if an abuse of discretion is found, reversal is warranted only if the error affected the substantial rights of the adverse party or resulted in a miscarriage of justice. *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 20, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164 (1980).

{¶115} An abuse of discretion is an exacting standard, requiring a showing of "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), citing *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4, 684 N.E.2d 668 (1997).* An abuse of discretion may also be established where the court's reasoning is unreasonable, legally incorrect, or results in a manifest injustice. *See Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *In re Guardianship of S.H.*, 2013-Ohio-4380, ¶ 9 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.); *Donaldson v. Donaldson*, 2024-Ohio-4597, ¶ 70 (5th Dist.).

**The Video – State's Exhibit 2D**

{¶116} During Lieutenant Antonides's testimony, the State introduced a screen recording of text message exchange between "Bestie" and C.S. 2T. at 84-88; State's Exhibit 2D. Defense counsel objected. 2T. at 187-190. The trial court ultimately sustained the objection and excluded Exhibit 2D for lack of authentication. *Id.* at 190. Defense counsel, however, did not request that testimony referencing Exhibit 2D be stricken from the record or that a curative jury instruction be given.

{¶117} Even assuming that testimony concerning Exhibit 2D was erroneously admitted, the error was harmless. In evaluating harmless error, we apply the three-part test articulated in *State v. Harris*, 2015-Ohio-166, ¶ 37: (1) whether the error prejudiced the defendant, (2) whether it was harmless beyond a reasonable doubt, and (3) whether, after removing the disputed evidence, the remaining evidence establishes guilt beyond a reasonable doubt. *Id.; State v. Boaston*, 2020-Ohio-1061, ¶ 63; *State v. Brook*, 2024-Ohio-3074, ¶ 72 (5th Dist.).

{¶118} Here, C.S. testified at trial and was subject to cross-examination. The jury directly observed her demeanor and credibility. She testified that she exchanged phone numbers with Roman-Navarre, identified the number he used, and confirmed that she sent him text messages and Snapchat pictures. 1BT. at 78, 82, 85, 90; State's Exhibits 1A, 2B. She also identified photographs showing her nails after a manicure. 1BT. at 89; State's Exhibit 1B. A similar image appeared in the disputed video. 2T. at 86. The remainder of the conversation in Exhibit 2D involved Roman-Navarre attempting to meet with C.S. privately, offering money, and C.S. declining such conduct. 2T. at 88.

{¶119} This evidence was cumulative of testimony and exhibits properly admitted at trial. The jury heard the same substance—Roman-Navarre's communications, his intent, and C.S.'s responses—through admissible sources. Thus, even if references to Exhibit 2D should have been excluded, the overlap renders any error harmless beyond a reasonable doubt. *See State v. Aeschilmann*, 2014-Ohio-4462, ¶¶ 95-96 (5th Dist.).

**Text Messages**

{¶120} Roman-Navarre does not identify with specificity any portion of the record demonstrating that unauthenticated text messages were admitted. Without citations to the record, this Court cannot meaningfully review the alleged error. *See Daniels v. Santic*, 2005-Ohio-1101, ¶¶ 13-15 (11th Dist.); *State ex rel. Physicians Comm. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 13; *State ex rel. Petro v. Gold*, 2006-Ohio-943, ¶ 94 (10th Dist.), *appeal not allowed*, 110 Ohio St.3d 1439, 2006-Ohio-3862 [Table], *reconsideration denied*, 111 Ohio St.3d 1418, 2006-Ohio-5083 [Table]; *Porter v. Keefe*, 2003-Ohio-7267, ¶¶ 109-113 (6th Dist.). The failure to provide record support for an assignment of error is fatal under App.R. 16(A)(7).

{¶121} The record demonstrates that the trial court properly excluded State's Exhibit 2D for lack of authentication, and any limited testimony referencing the video was cumulative of other properly admitted evidence and therefore harmless beyond a reasonable doubt. Moreover, Roman-Navarre's failure to identify, with specific record citations, any unauthenticated text messages admitted at trial precludes meaningful appellate review of his claim. Under App.R. 16(A)(7), an appellant bears the burden of demonstrating error through argument and citation to the record, which Roman-Navarre has not done.

{¶122} Even if some error occurred, it did not affect the outcome of the trial. The State presented overwhelming evidence of guilt through C.S.'s testimony, corroborating exhibits, and other admissible communications establishing Roman-Navarre's identity, intent, and relationship with the victim. The cumulative nature of the disputed evidence, combined with the strength of the remaining evidence, eliminates any reasonable probability that the complained-of testimony contributed to the verdict.

{¶123} Accordingly, Roman-Navarre has failed to demonstrate prejudicial error. The sixth assignment of error is without merit and is overruled.

### VII. - Venue

{¶124} In his seventh assignment of error, Roman-Navarre argues that the State failed to establish that the alleged offenses occurred in Stark County, Ohio.

{¶125} Section 10, Article I of the Ohio Constitution provides that venue—the proper place to try a criminal matter—is fixed as follows: "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter…, in the territory of which the offense or any element of the offense was committed." Accordingly,

the trial should occur in the jurisdiction where the offense took place. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983).

{¶126} Although venue is not a material element of the offense charged, it is a fact that must be proved in a criminal prosecution unless waived by the defendant. *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981). Venue must be established beyond a reasonable doubt but need not be proved in express terms; it may be inferred from the facts and circumstances presented at trial. *State v. Dickerson*, 77 Ohio St. 34 (1907), paragraph one of the syllabus.

{¶127} In the case at bar, the evidence presented at trial established venue in Stark County. C.S.'s mother filed the initial police report in Massillon, Ohio 1BT. at 28. The Massillon Police Department investigated the case 2T. at 74, 76-78. Roman-Navarre's address was listed as Massillon, Ohio. *Id.* at 97. C.S. testified that one of the oral sex incidents occurred at a car wash – a location in "Massillon, Stark, County, Ohio." *Id.* at 102. C.S. identified a photograph of the car wash. 1BT. at 86; State's Exhibit 1C.

{¶128} Thus, the record reflects that the specific address of the crime, including the city and county, was provided. 2T. at 102.

{¶129} The State presented sufficient evidence that the offense occurred in Stark County, Ohio including testimony identifying the precise location of one incident of oral sex and corroborating details from the investigation. Venue was therefore properly established beyond a reasonable doubt.

{¶130} Roman-Navarre's seventh assignment of error is overruled.

## VIII. - Cumulative Error

{¶131} In his eighth assignment of error, Roman-Navarre contends that cumulative errors in the admission or exclusion of evidence deprived him of a fair trial.

{¶132} The Supreme Court of Ohio has recognized the cumulative error doctrine. *State v. Brown*, 2003-Ohio-5059. However, the doctrine does not apply where the defendant "cannot point to multiple instances of harmless error." *State v. Mammone*, 2014-Ohio-1942, ¶ 148, quoting *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶133} To the extent that any claimed error by the trial court was harmless, the cumulative effect of such errors was likewise harmless, as they did not materially affect the verdict. *State v. Leonard*, 2004-Ohio-6235, ¶ 185.

{¶134} Because this case does not involve multiple instances of error, the cumulative error doctrine is inapplicable. Roman-Navarre's eighth assignment of error is overruled.

## IX. – Manifest Weight of the Evidence

{¶135} In his ninth assignment of error, Roman-Navarre argues that his conviction is against the manifest weight of the evidence.

### Standard of Appellate Review –Manifest Weight of the Evidence

{¶136} The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶137} When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins* at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶138} Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶139} The Supreme Court of Ohio reiterated that an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Jordan*, 2023-Ohio-3800, ¶ 17.  The Court specifically directed, "'Sitting as the "thirteenth juror,"' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *Id., citing State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Sheppard,* 2025-Ohio-2747, ¶ 24 (5th Dist.).

{¶140}  A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387 [internal quotations omitted].

{¶141} To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur.  Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶142} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of the witnesses, we find that the record contains no compelling evidence weighing heavily against Roman-Navarre's conviction. Rather, we find the greater amount of credible evidence produced at trial supports the jury's verdict. Accordingly, we find no indication that the jury lost its way or ignored substantial evidence in reaching its verdict.

{¶143} Roman-Navarre's ninth assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Stark County Court of Common Pleas is affirmed .

Costs to Appellant.

By: Popham, J.,

Baldwin, J. and

Gormley, P. J. concur.